[Cite as *State v. Wilson*, 2013-Ohio-4643.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 14-13-04

    v.

MAURICE M. HENRY WILSON,        O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 12-CR-0046

Judgment Affirmed

Date of Decision:  October 21, 2013

APPEARANCES:

    *Alison Boggs* for Appellant

    *Terry L. Hord*  for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, Maurice M. Henry Wilson, appeals the Union County Court of Common Pleas' decisions overruling his motion to compel discovery and overruling, in part, his motion to suppress evidence following a traffic stop. For the reasons that follow, we affirm.

{¶2} On August 17, 2011 around 2:56 p.m., Ohio State Highway Patrol Trooper Travis Woodyard was stationary in his Chevy Tahoe patrol vehicle on U.S. Route 33 just west of State Route 161 inside of Union County, Ohio. (Sept. 25, 2012 Tr. at 5-6, 13, 20, 33); (D's Ex. A). Woodyard observed a Ford Taurus in the left lane visibly slowing from 65 or 66 miles per hour (m.p.h.)—around the speed limit of 65 m.p.h.—to 56 or 57 m.p.h. and causing cars to stack up behind it. (*Id.* at 6, 21). As the Taurus passed, Woodyard observed a male driver, a female passenger, and a male passenger in the back seat, later identified as Wilson, who appeared to be asleep. (*Id.*). The Taurus continued past Woodyard in the left lane below the speed limit impeding traffic. (*Id.*). Woodyard then observed the Taurus move from the left lane to the right lane, cutting off a semi tractor-trailer. (*Id.*). Woodyard decided to stop the driver for a traffic violation. (*Id.* at 7).

{¶3} Prior to turning on his lights to execute the traffic stop, Woodyard observed Wilson—who appeared to be sleeping when the Taurus passed Woodyard 45 seconds earlier—moving around in the back seat "raising up and

down, moving from side to side * * * bouncing all over * * * like a three year old." (*Id.*); (*Id.* at 21). When Woodyard approached the vehicle to advise the driver, subsequently identified as Ryan Fissel, of the reason for the stop, Woodyard observed that Fissel was "very, very nervous * * * couldn't make eye contact[, and] * * * had a very rapid heart beat [sic]." (*Id.* at 8). Woodyard then noticed that Fissel had "track marks" on his arm, consistent with drug abuse; and, Woodyard further noticed that Fissel looked like he had lost 40 pounds from when his driver's license was issued, even though that was only about four to five months prior. (*Id.*). Woodyard began to suspect that Fissel was a heroin user. (*Id.* at 8-9).

{¶4} Woodyard asked Fissel to step out of his vehicle and escorted Fissel back to his patrol vehicle, at which point Fissel's heartbeat and breathing escalated. (*Id.* at 9). Trooper James Cress arrived on the scene shortly thereafter and watched the remaining passengers in the vehicle. (*Id.* at 40, 51, 56). Woodyard asked Fissel if he had any knives, needles, weapons, or things of that nature on his person, and Fissel indicated "no." (*Id.* at 10). Woodard then asked to check for weapons, Fissel consented, and Woodyard identified something soft with something hard inside of it in Fissel's pocket, which Fissel indicated was his eyeglass case. (*Id.*). Because Fissel was wearing his eyeglasses, Woodard asked Fissel what was inside his eyeglass case, and Fissel indicated he did not know.

(*Id.*). With Fissel's consent, Woodard removed and opened the eyeglass case and discovered two syringes, marijuana, and at least one foil ball containing heroin. (*Id.*).

{¶5} State Highway Patrol Lieutenant Kemmer, who arrived at the scene shortly after Woodyard searched Fissel, talked to Woodyard who informed him that Fissel had two syringes on his person. (*Id.* at 44). Thereafter, Kemmer made contact with the right, front passenger, who was later identified as Natasha Fissel, Ryan's wife. (*Id.* at 11, 44). Kemmer asked Natasha to exit the vehicle, walked her back to place her into his patrol vehicle, and asked her if she had anything that was going to poke him if he conducted a pat-down for weapons. (*Id.* at 44). Natasha stated that she had two syringes in the front of her pants, so Kemmer removed them, but he found no further contraband on Natasha's person. (*Id.* at 45). At that point, Kemmer placed Natasha into the back of his patrol vehicle and began assisting Woodyard with the final passenger, Wilson. (*Id.*).

{¶6} Around the time Woodyard and Kemmer were searching and securing the Fissels, Cress briefly patted Wilson down for weapons but did not find anything. (*Id.* at 58, 62-63). Woodyard returned to the vehicle, and Cress informed Woodyard that he patted down Wilson for weapons and did not find any. (*Id.*). Woodyard then asked Wilson if he could conduct an additional pat-down for weapons, to which Wilson agreed. (*Id.* at 12-13, 63). During the additional pat-

-4-

down, Woodyard found "something hard, up high in [Wilson's] butt crack area," so he asked Wilson what it was, but Wilson said nothing. (*Id.* at 13). Because Wilson was wearing very thick sweatpants and a pair of pajama pants or boxers, Woodyard handcuffed and escorted Wilson back by his patrol vehicle out of the view of traffic where Woodyard moved Wilson's sweatpants out of the way and patted-down Wilson's second pair of pants. (*Id.* at 13, 29, 64). During this subsequent pat-down Woodard determined that the unidentified item was "something that had either foil balls or crack rocks." (*Id.* at 14). Woodyard then asked Wilson what the item was, and Wilson stated it was $1,000 worth of heroin. (*Id.* at 41). Woodyard then asked Wilson if he would remove the drugs from his person if he was unhandcuffed, and Wilson agreed. (*Id.*). Wilson removed the drugs, Woodard then advised Wilson of his *Miranda* rights, and Cress placed Wilson into a cruiser. (*Id.* at 14).

{¶7} On March 13, 2012, the Union County Grand Jury indicted Wilson on Count One of possession of heroin in violation of R.C. 2925.11(A), a second-degree felony, and Count Two of aggravated drug trafficking in violation of R.C. 2925.03(A)(2), a second-degree felony, stemming from the August 17, 2011 traffic stop. (Doc. No. 1).

{¶8} On March 23, 2012, Wilson was arraigned and entered pleas of not guilty. (Doc. No. 5).

**{¶9}** On June 11, 2012, Wilson filed a motion to suppress all statements he made and the evidence obtained during the traffic stop. (Doc. No. 25). In particular, Wilson argued that law enforcement unlawfully detained him in absence of any reasonable suspicion that he was violating or about to violate any law, because he was merely a passenger in the vehicle. (*Id.*).

**{¶10}** On June 19, 2012, the State filed a memorandum contra Wilson's motion to suppress, arguing that: (1) the initial traffic stop was lawful because Trooper Woodyard had probable cause to believe that the driver was violating no less than three separate traffic offenses, including: speeding, impeding traffic, and reckless operation; (2) law enforcement was permitted to remove Wilson, a passenger, from the vehicle without further suspicion of criminal activity; (3) law enforcement was permitted to pat-down Wilson since they reasonably believed that he could be armed; and, (4) the drug contraband was found during this lawful pat-down for weapons. (Doc. No. 27).

**{¶11}** On August 9, 2012, Wilson filed praecipes for service of subpoenas duces tecum, pursuant to Crim.R. 17(A), upon Troopers Woodyard and Cress and Lieutenant Kemmer "[t]o produce to Counsel for defense any and all video recording [sic] from the traffic stop conducted on August 17, 2011 at 1456 hours on or before Wednesday, August 15, 2012," five days prior to the scheduled hearing on the motion to suppress. (Doc. No. 41).

{¶12} Thereafter, the suppression hearing was continued to September 13, 2012 and then to September 25, 2012. (Doc. Nos. 55, 57).

{¶13} On September 18, 2012, Wilson again filed praecipes for service of subpoenas duces tecum upon the same law enforcement officers for the video from the traffic stop. (Doc. No. 61).

{¶14} On September 25, 2012, the trial court held a hearing on the motion to suppress. During closing argument counsel for Wilson argued that "there should have been a video that was available to the defendant * * * And the video could have very well been exculpatory * * *." (Tr. at 83). The trial court rejected this argument, noting that counsel for Wilson failed to develop any evidence during the hearing concerning the allegedly missing cruiser videos. (*Id.* at 84). Thereafter, the trial court found that the initial traffic stop was lawful based upon Trooper Woodyard's reasonable articulable suspicion of a traffic violation, and patting-down Wilson for weapons was reasonable in light of the suspected drug trafficking involved. (*Id.* at 84-85). The trial court concluded that the physical evidence obtained during the traffic stop was admissible, as well as any statements Wilson made prior to being in custody or after his written waiver of rights was executed. (*Id.* at 86-87). However, the trial court determined that the only issue remaining was whether Wilson's statement that the unidentified item was heroin—made after Wilson was handcuffed but prior to Trooper Woodyard administering

*Miranda* warnings—was admissible. (*Id.* at 86-87). The trial court asked the parties to submit short briefs on this issue and adjourned the hearing. (*Id.* at 87).

{¶15} The parties failed to file any briefs on this issue as requested by the trial court. On October 19, 2012, the trial court issued its decision overruling the motion to suppress as it related to all physical evidence obtained and all statements Wilson made after his signed waiver of rights and statements Wilson made prior to being handcuffed. (Doc. No. 68). However, the trial court concluded that Wilson was in custody after Woodyard handcuffed him; and therefore, any statement Wilson made after that but prior to *Miranda* warnings was inadmissible. (*Id.*).

{¶16} On November 19, 2012, the trial court scheduled jury trial for January 3-4, 2013. (Doc. No. 71).

{¶17} On December 31, 2012, Wilson filed a motion to compel discovery concerning the alleged destruction of cruiser videos from the traffic stop. (Doc. No. 83). That same day, the trial court denied the motion, finding that this issue was already addressed during the suppression hearing when counsel for Wilson failed to produce any evidence on the same. (Doc. No. 84).

{¶18} On January 3, 2013, Wilson withdrew his previously tendered not guilty pleas and entered no contest pleas to both counts in the indictment. (Doc. No. 86); (Jan. 3, 2013 Tr. at 5, 20-21). Thereafter, the trial court found Wilson

guilty, ordered a pre-sentence investigation (PSI) report, and scheduled sentencing for February 11, 2013. (*Id.*); (*Id.* at 21-23).

{¶19} On February 11, 2013, the trial court held a sentencing hearing whereat it determined that Count One of drug possession was an allied offense of Count Two of aggravated drug trafficking. (Tr. at 3). The State elected to proceed on Count Two for purposes of sentencing, and the trial court sentenced Wilson to a mandatory six years imprisonment. (Tr. at 9). The trial court also ordered that Wilson serve the six-year term of imprisonment consecutive to the term of imprisonment imposed in Logan County Case No. CR 12030069. (*Id.*). The trial court filed its judgment entry of sentence that same day. (Doc. No. 90).

{¶20} On March 7, 2013, Wilson filed a notice of appeal. (Doc. No. 96). Wilson raises two assignments of error for our review.

## Assignment of Error No. I

**Appellant's due process rights were violated when the trial court overruled appellant's motion to compel discovery without a hearing as the allegation was that the appellee withheld possible Brady evidence.**

{¶21} In his first assignment of error, Wilson argues that the trial court erred by denying his motion to compel discovery of potential *Brady* evidence without first holding a hearing.

In *Brady v. Maryland*, the United States Supreme Court held that:

[t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

373 U.S. 83, 87, 83 S.Ct. 1194 (1963). However, the U.S. Supreme Court later clarified that:

The rule of Brady * * * arguably applies in three quite different situations. Each involves the discovery, *after trial*, of information which had been *known to the prosecution but unknown to the defense*.

*United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392 (1976) (emphasis added).

**{¶22}** Based upon this latter statement concerning *Brady*'s scope, the Ohio Supreme Court has found that no *Brady* violation occurs when evidence is discovered and presented during the trial. *State v. Wickline*, 50 Ohio St.3d 114, 116 (1990). When a defendant discovers that the State withheld potentially exculpatory evidence during the course of the trial proceedings, and not after, Crim.R. 16(L), and not *Brady*, governs. *Id.* at 116-117.[1]

---

[1] At the time of the Ohio Supreme Court's decision in *Wickline*, the applicable Rule of Criminal Procedure governing discovery sanctions was Crim.R. 16(E)(1). However, Rule 16 of the Rules of Criminal Procedure was subsequently amended on July 1, 2010, and the current section governing discovery sanctions is Crim.R. 16(L)(1).

{¶23} Defense counsel subpoenaed "any and all video recording [sic] from the traffic stop conducted on August 17, 2011 at 1456 hours" from all three law enforcement officers prior to the motion to suppress hearing. (Doc. No. 41). After the trial court partially granted Wilson's motion to suppress, defense counsel filed a motion to compel discovery of "evidence of the destruction or electronic failure which caused the recorded video from the traffic stop on August 17, 2011." (Doc. No. 83). Counsel represented in the motion to compel that:

> At [the suppression hearing] law enforcement represented to counsel that while the two vehicles on site that day were equipped with recording devices and the stop and search was recorded there was some unidentified computer glitch that caused both videos to be destroyed. Subsequent to this hearing, defense counsel has repeatedly requested proof of some form that this was an unavoidable technical error and not the result of bad faith in the destruction of evidence.

(*Id.*). Based upon the foregoing, it is clear that the potentially exculpatory evidence was apparent to defense counsel during the trial proceedings; and therefore, the proper remedy was contained in Crim.R. 16(L), governing discovery. *Wickline* at 116-117.

**{¶24}** While acknowledging that *Brady* violations generally occur when exculpatory evidence is discovered *after trial*, Wilson points out that The Court of Appeals for the Second Appellate District has rejected that bright-line rule, finding that a *Brady* claim could exist "where other remedies were not readily available to the defendant[], the evidence was undoubtedly material * * *, and the finder of fact did not actually weigh the exculpatory evidence in reaching a verdict[.]" *State v. Aldridge*, 120 Ohio App.3d 122, 146 (1997). We reject this argument. Aside from the fact that this statement appears to be obiter dictum, the rule would not apply here since Wilson had other remedies—namely those found in Crim.R. 16(L)—and it cannot be said that "the evidence is undoubtedly material," because the contents of the cruiser videos is not known. In this case, it can only be said that the video evidence was "potentially exculpatory."

**{¶25}** We must also reject Wilson's argument that a hearing was required in this case. Wilson's argument is based upon the faulty premise that an alleged *Brady* violation occurred, which premise we have already rejected. Beyond that, the cases Wilson cites in support of his argument for a hearing are post-conviction cases, not direct appeals from discovery matters.

**{¶26}** Wilson's first assignment of error is, therefore, overruled.

### Assignment of Error No. II

**The trial court committed error when it suppressed some of appellant's statements made during the traffic stop but ruled other statements and the physical evidence from the traffic stop were not suppressible, in violation of Section 10, Article I of the Ohio Constitution.**

{¶27} In his second assignment of error, Wilson argues that the trial court erred by suppressing only the statements he made prior to *Miranda* warnings. Wilson argues that his statements after *Miranda* warnings were part of a single interrogation and should have also been suppressed. Wilson further argues that the physical evidence must be suppressed because any search beyond the initial pat-down was unconstitutional without a warrant.

{¶28} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.*

{¶29} When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must decide whether the

facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶30} In his motion to suppress, Wilson argued that his further detention for multiple pat-down searches was unconstitutional absent any reasonable suspicion that he—a passenger in the vehicle—had violated, was violating, or about to violate the law. (Doc. No. 25). Wilson also argued that law enforcement unreasonably expanded the scope of the search after the first pat-down revealed no weapons. (*Id.*). At the suppression hearing, counsel for Wilson argued that the initial traffic stop was unlawful; the continued detention of Wilson was unlawful since law enforcement did not have an independent reason to detain Wilson apart from Mr. Fissel's actions; Wilson did not voluntarily consent to the pat-down searches; law enforcement asked Wilson incriminating questions without the benefit of *Miranda* warnings; and, law enforcement withheld potentially exculpatory cruiser videos. (Sept. 25, 2012 Tr. at 79-83).

{¶31} Now, on appeal, Wilson argues that "evidence gathered before the Miranda warning was administered must be suppressed based on Section 10, Article I of the Ohio Constitution and the pre- and post-Miranda statements are inadmissible," citing *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 9. This argument is strikingly different than Wilson's argument in the trial court. In fact, nowhere in any of his filings or during the motion hearing did Wilson

mention *State v. Farris*. "[T]he defendant must make clear the grounds upon which he challenges the submission of evidence pursuant to a warrantless search or seizure," and the "[f]ailure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal." *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988). *See also State v. Wilson*, 2d Dist. Montgomery No. 22001, 2007-Ohio-6581, ¶ 12; *State v. Mock*, 11th Dist. Lake No. 2012-L-066, 2013-Ohio-874, ¶ 7-10. We will not address Wilson's new arguments for suppression of the evidence in the first instance on appeal.

{¶32} Before Woodyard patted Wilson down, Woodyard had observed that Fissel was very nervous, had track marks on his arms indicative of drug abuse, and observed Wilson making furtive movements in the rear of the vehicle. Woodyard also had found drugs and drug paraphernalia upon both Fissel and Natasha. At that point, Woodyard could have reasonably suspected that Wilson was involved in drug trafficking, giving rise to a nearly automatic right to frisk for weapons. *State v. Evans*, 67 Ohio St.3d 405, 413 (1993). Wilson consented to the subsequent pat-down for weapons and, during that consensual pat-down, Woodyard identified, by plain feeling, drug contraband. *Minnesota v. Dickerson*, 508 U.S. 366, 375-376, 113 S.Ct. 2130 (1993). Consequently, the trial court did not err by denying Wilson's motion to suppress as it related to the physical

evidence. The trial court also did not err by denying Wilson's motion to suppress statements he made after being fully advised of his *Miranda* rights.

{¶33} Wilson's second assignment of error is, therefore, overruled.

{¶34} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**