[Cite as *State v. Shellabarger*, 2022-Ohio-4685.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO.  1-21-50

    v.

VICKY L. SHELLABARGER,             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No.  CR 2018 0363

**Judgment Affirmed**

**Date of Decision:  December 27, 2022**

APPEARANCES:

    *Thomas J. Lucente, Jr.* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Vicky L. Shellabarger ("Shellabarger") appeals the May 24, 2021 judgment entry of conviction and sentencing of the Allen County Common Pleas Court. For the reasons that follow, we affirm.

{¶2} This case stems from the death of M.S., Shellabarger's minor child. At 12:09 a.m. on April 29, 2018, Shellabarger made a 9-1-1 emergency call to report that she discovered M.S. unresponsive in her "pack and play" in her boyfriend's apartment in Delphos, Allen County, Ohio.[1] Shortly thereafter, M.S. was transported to the hospital where she was pronounced dead. An autopsy revealed that M.S.'s death was caused by abdominal trauma.

{¶3} On August 18, 2018, the Allen County Grand Jury indicted Shellabarger on four criminal counts including: Count One for murder in violation of R.C. 2903.02(B), (D) and R.C. 2929.02(D), an unclassified felony; Count Two for endangering children in violation of R.C. 2919.22(B)(1), (E)(2)(d), a second-degree felony; Count Three for involuntary manslaughter in violation of R.C. 2903.04(A), (C), a first-degree felony; and Count Four for endangering children in violation of R.C. 2919.22(A), (E)(2)(c), a third-degree felony. On August 27, 2018, Shellabarger was arraigned and entered not-guilty pleas.

---

[1] A "pack and play" is a portable crib and play area for infants and toddlers.

{¶4} A jury trial was held on March 30-April 2, 2021. During deliberations, the jury reported to the trial court that they were deadlocked as to Count One, and even if the trial court gave them additional time to deliberate, they would not be able to reach a unanimous verdict. The trial court declared a mistrial as to the murder charge. However, the jury did reach verdicts on Counts Two, Three, and Four wherein they found Shellabarger guilty of involuntary manslaughter and two counts of endangering children.

{¶5} At the sentencing hearing held on May 24, 2021, the trial court determined that Counts Two, Three, and Four merged for the purposes of sentencing. The State elected to proceed on the involuntary-manslaughter charge, and the trial court sentenced Shellabarger to a stated prison term of 11 years.[2]

{¶6} Shellabarger timely appeals and raises five assignments of error, which we will address in the order that they were presented.

**Assignment of Error I**

**The Trial Court Erred When It Permitted The State To Admit Evidence Of Two Contradictory Transcripts Of A 9-1-1 Call Without Any Testimony As To How The Inaudible Audio Was Transcribed.**

{¶7} In her first assignment of error, Shellabarger argues that the trial court erred by admitting two *contradictory* transcripts of her 9-1-1 emergency call in the

---

[2] The Reagan Tokes Law, Am.Sub.S.B. No. 201, 2018 Ohio Laws 157, effective March 22, 2019, made substantive amendments to Ohio's felony sentencing statutes with respect to felonies of the first and second degree committed after the effective date of the amendments. Those changes are not at issue in this appeal.

Case No. 1-21-50

instant case. Specifically, Shellabarger asserts that the trial court erred when it allowed the jury to utilize State's Exhibit 3 as an aid thereby violating Evid.R. 602, 702, 802, and 1002.[3]

*Standard of Review*

{¶8} The admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001), citing *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). Significantly, the trial court is vested with this discretion because it is in a much better position than we are to evaluate the authenticity of evidence. *See State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 129. An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

*Analysis*

{¶9} Notably, Shellabarger did not raise any of these arguments related to Evid.R. 602, 702, 802, or 1002, at trial. Instead, she only argued that the State failed to lay a foundation for the admission of State's Exhibit 3 under Evid.R. 901(A).

---

[3] State's Exhibit 3 is a "slowed down" transcribed version of the State's Exhibit 1 (the actual 9-1-1 call) because Exhibit 1 was difficult to understand. State's Exhibit 2 is the State's attempt to reduce Exhibit 1 to writing.

-4-

Hence, since Shellabarger did not object to the admission of State's Exhibit 3 on these stated bases, we review her assertions for plain error. *See* Crim.R. 52(B).

**{¶10}** For plain error to apply, the trial court must have deviated from a legal rule, the error must be plain, i.e., an obvious defect in the proceeding, and the error must have affected the defendant's "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "[T]o demonstrate that the trial court's error affected a substantial right, the defendant must establish that there is a reasonable probability that, but for the trial court's error, the outcome of the proceeding would have been otherwise." *State v. Sutton*, 3d Dist. Seneca No. 13-21-11, 2022-Ohio-2452, ¶ 50. We take "[n]otice of plain error * * * with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. Under Crim.R. 52(B), "the defendant bears the burden of demonstrating that a plain error affected his substantial rights." (Emphasis sic.) *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14.

**{¶11}** Shellabarger raises several assertions in support of her argument that State's Exhibit 3 should not be admissible. First, she asserts that Special Agent Lisa Hack ("SA Hack") lacked personal knowledge of the transcript and was permitted to testify as an expert witness. Secondly, she asserts that the admission of State's

Exhibit 3 violates the best-evidence rule. Lastly, Shellabarger challenges the admission of State's Exhibit 3 because it contains hearsay.

**{¶12}** The record reveals that Shellabarger *stipulated* to the admission of State's Exhibit 1 (i.e., a DVD of the recorded 9-1-1 emergency call) and State's Exhibit 2 (i.e., a transcript prepared by the Allen County Sheriff's Office of the recorded 9-1-1 call). Importantly, she does not challenge the admissibility of either of these two exhibits. On the contrary, Shellabarger challenges the admission of State's Exhibit 3 (i.e., a second transcript of the 9-1-1 emergency call prepared by the Federal Bureau of Investigation ("FBI")) arguing that it was erroneously admitted because it contradicts State's Exhibit 2. Thus, according to Shellabarger, it violates certain Rules of Evidence.

**{¶13}** We begin by addressing Shellabarger's arguments related to SA Hack's lack of personal knowledge and whether her testimony pertaining to State's Exhibit 3 involved expert-witness testimony. To address Shellabarger's assertions, we start with the authentication of State's Exhibit 3 under Evid.R. 901 since her assignment of error relates to the purported erroneous admission of a writing.

**{¶14}** Significantly, under the Rules of Evidence, State's Exhibit 3 (a writing) could be authenticated by the "[t]estimony of witness with knowledge" that "a matter is what it is claimed to be" *or* by "[p]rocess or system" that entails "[e]vidence describing a process or system used to produce a result and showing

that the process or system produce[d] an accurate result." Evid.R. 901(B)(1), (B)(9). *See State v. Ross*, 3d Dist. Allen No. 1-08-047, 2009-Ohio-188, ¶ 18, *appeal not accepted*, 122 Ohio St.3d 1410, 2009-Ohio-2751. Importantly, SA Hack, testified as a *lay witness* to the process used by the FBI to produce State's Exhibit 3. Further, she testified regarding the accuracy of the result after her review of State's Exhibits 1, 2, and 3. Consequently, to the extent that Shellabarger raises arguments related to S.A. Hack's lack of personal knowledge under Evid.R. 602 and attempts to construe her as an *expert witness* under Evid.R. 702, her arguments lack merit. *See State v. Benedict*, 3d Dist. Crawford No. 3-21-08, 2022-Ohio-3600, ¶ 41-43, citing Evid.R. 602; *State v. Morris*, 3d Dist. Henry No. 7-21-05, 2022-Ohio-3608, ¶ 17-20, citing Evid.R. 104(A), 602, 701, and 702.

**{¶15}** Additionally, SA Hack's testimony detailed that the purpose of slowing down the 9-1-1 emergency call was to identify the portions of audio recording deemed as inaudible in State's Exhibit 2 (the sheriff's office transcript). Indeed, the two exhibits were not in *conflict* with on another; rather, State's Exhibit 3, (the FBI transcript) *clarified* portions of the audio delineated as *inaudible* in State's Exhibit 2, thereby rendering State's Exhibit 3 a more accurate transcript of the 9-1-1 emergency call.[4]

---

[4] State's Exhibit 3 was a copy of State's Exhibit 2 demarking deletions (of inaudible) with strikethroughs and depicting the previously inaudible language and replacing it with the missing statements (in red font) made by Shellabarger. (State's Ex. 3). (*See* State's Exs. 1, 2).

**{¶16}** In this case, the trial court never reached a determination regarding whether there were material differences between the recording of the 9-1-1 emergency call (State's Exhibit 1) and the transcript prepared by the FBI (State's Exhibit 3) because the defense failed to identify any inconsistencies between those exhibits.

**{¶17}** Here, the recording of the 9-1-1 emergency call (State's Exhibit 1) was played for the jury and was admitted into evidence in accordance with the best-evidence rule. *See* Evid.R. 1002. *See also State v. Salyers*, 3d Dist. Allen No. 1-19-17, 2020-Ohio-147, ¶ 36. The trial court properly instructed the jury that both transcripts (State's Exhibits 2 and 3) were merely juror aids for their use in determining the content of the recording, *if* the recording was difficult to hear. Moreover, since Shellabarger has failed to identity any inconsistencies between the 9-1-1 call and State's Exhibit 3, and because she cannot establish that the jury relied upon the juror aids, her argument that the admission of State's Exhibit 3 violated Evid.R. 1002 lacks merit.

**{¶18}** Next, we turn to Shellabarger's last assertion that the admission of State's Exhibit 3 violated Evid.R. 802 resulting in the admission of hearsay. The record is clear that Shellabarger was the person who placed the recorded 9-1-1 emergency call on April 29th and is the defendant in the instant case. Thus, her statements in the 9-1-1 call along with the transcript of that recording constitute

admissions of a party-opponent, and are exempt under the hearsay rules. Shellabarger's assertion that her statements contained within the transcript should not have been admissible under Evid.R. 802, lacks merit.

{¶19} Accordingly, we conclude that the trial court did not err by admitting State's Exhibit 3 under the circumstances presented in this appeal.

{¶20} Accordingly, Shellabarger's first assignment of error is overruled.

### Assignment of Error II

**Defendant's Due Process Rights Were Violated When The State Of Ohio Violated The Brady Rule And Failed To Turn Over Information In A Timely Manner That Could Have Been Used To Impeach A State's Witness And The Court Failed To Do Anything To Mitigate The Damage Cause [sic] By The State's Violation.**

{¶21} In her second assignment of error, Shellabarger argues the State's failure to divulge certain information to the defense until a week before trial violated her due-process rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). Specifically, Shellabarger asserts that the State failed to turn over impeachment evidence regarding one of the State's *anticipated* expert witnesses; that the notification regarding the *Brady* material was not timely; and the trial court erred by failing to mitigate damages caused by the *Brady* violation.[5]

---

[5] The State filed a *motion in limine* a week before trial seeking to prevent the defense from discussing two federal civil lawsuits filed against Dr. Schlievert on the basis it was irrelevant extrinsic evidence under Evid.R. 608(B); irrelevant to bias under Evid.R. 616(A); and that such information constituted collateral matters irrelevant to the credibility of the witness. In response, the defense filed a motion to dismiss or other relief on the basis that the State's failure to disclose that information violated Shellabarger's due-process rights since the defense believed it to be *Brady* material.

*Analysis*

**{¶22}** Because it is dispositive of all three portions of her argument related to this assignment of error, we conclude that Shellabarger's reliance on *Brady* is misplaced since *Brady* involves the discovery of evidence *after trial*. *See State v. Dahms*, 3d Dist. Seneca No. 13-16-16, 2017-Ohio-4221, ¶ 112, citing *State v. Jackson*, 10th Dist. Franklin No. 02AP-867, 2003-Ohio-6183, ¶ 24. Following the United States Supreme Court's clarification regarding the scope of *Brady*, the Supreme Court of Ohio concluded, "no Brady violation occurs when evidence is discovered and presented during the trial." *State v. Wilson*, 3d Dist. Union No. 14-13-04, 2013-Ohio-4643, ¶ 22, citing *State v. Wickline*, 50 Ohio St.3d 114, 116 (1990). Significantly, Shellabarger concedes that she received information prior to the commencement of trial; however, according to Shellabarger, the federal lawsuits were too voluminous to "sift through" in that period of time. (*See* Appellant's Brief at 15); (Mar. 24, 2021 Tr. at 1-7). Accordingly, no *Brady* violation exists under the circumstances presented in this appeal. *See Dahms* at ¶ 112 citing *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, ¶ 82.

**{¶23}** Therefore, the trial court did not error by granting the State's motion to exclude discussion related to the two federal civil lawsuits involving the State's expert witness.

**{¶24}** Accordingly, Shellabarger's second assignment of error is overruled.

## Assignment of Error III

**Appellant's Convictions Were Against The Manifest Weight Of The Evidence And Contrary To Law.**

## Assignment of Error IV

**The Defendant's Right To Due Process Of Law Was Violated Inasmuch As The Convictions Were Based On Insufficient Evidence.**

{¶25} In her third and fourth assignments of error, Shellabarger asserts that the jury's findings of guilt under Counts Two, Three, and Four are based upon insufficient evidence and are against the manifest weight of the evidence.[6]

### Standard of Review

{¶26} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997), superseded by statute on other grounds, *State v. Smith*, 80 Ohio St.3d 89 (1997). Thus, we address each legal concept, individually.

{¶27} "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *Id.* at 386, quoting

---

[6] Although, Shellabarger raises sufficiency-of-the-evidence and manifest-weight-of-the-evidence arguments related to Count Two, we decline to address her arguments. As the jury's finding of guilt as to Count Two merged with Count Three for the purposes of sentencing (with the State electing to proceed on Count Three), the jury's finding of guilt related to Count Two never evolved into a "conviction" since Shellabarger received no sentence under Count Two. *See State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 16, citing *State v. Henderson*, 58 Ohio St.2d 171, 178 (1979). Thus, we need not address her arguments challenging the sufficiency of the evidence or the manifest weight of the evidence as to Count Two because error, if any, would be harmless beyond a reasonable doubt. (*See* Doc. No. 545). *See Ramos* at ¶ 13, 18.

Black's Law Dictionary 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.* "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds*, *Smith* at 89. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 1st Dist. Hamilton No. C-110097, 2011-Ohio-6267, ¶ 25. *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19, citing *Thompkins* at 386; *State v. Williams*, 3d. Dist. Logan No. 8-20-54, 2021-Ohio-1359, ¶ 6, quoting *State v. Croft*, 3d Dist. Auglaize No. 2-15-11, 2016-Ohio-449, ¶ 5.

{¶28} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of

witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). But we must give due deference to the fact-finder, because

> [t]he fact-finder * * * occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.

*Williams*, 2021-Ohio-1359, at ¶ 8, quoting *State v. Dailey*, 3d Dist. Crawford No. 3-07-23, 2008-Ohio-274, ¶ 7, quoting *State v. Thompson*, 127 Ohio App.3d 511, 529 (8th Dist.1998). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

Case No. 1-21-50

*Sufficiency-of-the-Evidence Analysis*

**{¶29}** Shellabarger was found guilty by the jury of involuntary manslaughter under Count Three. R.C. 2903.04 states:

> (A)  No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony.
>
> * * *
>
> (C) Whoever violates this section is guilty of involuntary manslaughter. Violation of division (A) of this section is a felony of the first degree. * * *.

R.C. 2903.04(A), (C). "The culpable mental state of involuntary manslaughter is supplied by the underlying offense." *State v. Johnson*, 8th Dist. Cuyahoga No. 94813, 2011-Ohio-1919, ¶ 54. *See State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 11 ("The 'criminal intent of involuntary manslaughter is supplied by the criminal intent to do the underlying unlawful act of which the homicide is a consequence.'"), quoting *State v. Potee*, 12th Dist. Clermont No. CA2016-06-045, 2017-Ohio-2926, ¶ 32. Consequently, we look to the predicate-felony offense, which in this case is endangering children under Count Four. (Apr. 2, 2021 Tr. at 476-478). (*See* Doc. Nos. 1, 533, 534).

**{¶30}** Shellabarger was found guilty by the jury of endangering children under Count Four. R.C. 2919.22, which provides in its pertinent parts:

> (A)  No person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *.

-14-

* * *

(E)(1) Whoever violates this section is guilty of endangering children.

(2) If the offender violates division (A) * * * of this section, endangering children is one of the following, and, in the circumstances described in division (E)(2)(e) of this section, that division applies:

* * *

(c) If the violation is a violation of division (A) of this section and results in serious physical harm to the child involved, a felony of the third degree;

R.C. 2919.22(A), (E)(2)(c). The required mental state for endangering children in violation of R.C. 2919.22(A) is recklessness. *State v. McGee*, 79 Ohio St.3d 193, 195 (1997), citing R.C. 2901.21(B). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). "Substantial risk" is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶31} On appeal, Shellabarger contends the State failed to prove that the injuries that caused M.S.'s death were inflicted by her. Since Shellabarger does not dispute any of the underlying elements of the offenses of which she was found

guilty, other than whether or not she caused M.S.'s death, we need only address that issue.

**{¶32}** Shellabarger argues that since no one saw her inflict injuries upon M.S., someone else must have caused them. Here, we recognize that the predicate-felony offense for Shellabarger's involuntary-manslaughter conviction (i.e., endangering children) was charged as an act of omission (neglect), rather than an act of commission (abuse).

**{¶33}** The evidence presented at trial by the State supports that Shellabarger lacked an attachment and bond with M.S and that she left often M.S. with Rose Colchin ("Colchin") for extended periods of time. Colchin had been babysitting M.S. since she was three months old. Further, Colchin testified that Shellabarger had recently discussed the possibility of her adopting M.S. According to Colchin, when she returned M.S. to Shellabarger on April 28, 2018, M.S. had no bruises on her abdomen.

**{¶34}** On the evening of April 28th, 2018, the State's evidence supported that Shellabarger was frustrated with everyone around her including M.S. who was crying and fussy. M.S. was last seen *alive* in the arms of Shellabarger at around 8:30p.m. (by her boyfriend (Coleman)) as Shellabarger was getting ready to put her to sleep in the pack and play. According to Coleman, no one else went back to the location where M.S. was sleeping for the remainder of the night.

{¶35} The record reveals that shortly after midnight on April 29th, Shellabarger let out a scream and Coleman ran back to the spare bedroom where M.S. was unresponsive in Shellabarger's arms. At the time, Shellabarger was on the phone with the 9-1-1 emergency operator, and Coleman's friend commenced cardiopulmonary-resuscitation efforts ("CPR") on M.S. During the recorded 9-1-1 emergency call Shellabarger refused to attempt CPR on M.S. and stated: "I didn't mean to hurt you" and "I didn't want to hurt you". (*See* State's Ex. 1).

{¶36} Moreover, several witnesses testified that Shellabarger was exhibiting behavior inconsistent with a grieving mother in the early morning and afternoon hours on April 29th. That is–witnesses testified that she was flirting with law-enforcement officers; that she was acting happy, joking, laughing, and talkative; and that she returned to Coleman's apartment after her child was declared deceased and donned an engagement ring she found in a spare bedroom, despite no proposal from Coleman. Further, according to several witnesses, Shellabarger had given different times regarding when she placed M.S. in her pack and play, which was at variance with other testimony presented at trial.

{¶37} Here, Shellabarger argues that since other people were present at Coleman's apartment (i.e., M.S.'s two older sisters ages eight and 10, Coleman and his two sons ages one and three, Coleman, and Coleman's friend) it is possible that someone else could have inflicted M.S.'s injuries resulting in her death.

**{¶38}** Significantly, the predicate-felony offense at issue here did not require the State to prove an act of commission (i.e. an act of abuse). *See State v. Guerra*, 3d Dist. Putnam No. 12-22-05, 2022-Ohio-3609, ¶ 13. The State was not required under Count Four to prove that Shellabarger *caused* M.S.'s injuries, but rather, that 1) Shellabarger had care and control over M.S., a child under the age of eighteen; 2) recklessly; 3) created a substantial risk to the health or safety of M.S.; 4) by violating her duty of care, protection, and support owed to M.S. *See id.* at ¶ 12.

**{¶39}** The record supports that Shellabarger is M.S.'s mother and that she exercised exclusive custody and control over M.S. (her two-year old child) at the time that M.S. suffered severe trauma to her bowel mesentery ultimately resulting in her death.[7] Based on this evidence, we conclude that a rational trier of fact (the jury) could conclude beyond a reasonable doubt that Shellabarger endangered her child as alleged under Count Four. Accordingly, Shellabarger's endangering-children conviction under Count Four is based on sufficient evidence.

**{¶40}** Since sufficient evidence exists for the jury to conclude beyond a reasonable doubt that Shellabarger endangered M.S. under Count Four, any challenge to her causing the death of M.S. under Count Three fails because Count Four is the predicate-felony offense of Count Three. Consequently, Shellabarger's

---

[7] In addition to the aforementioned injury, there was testimony that M.S. was missing a tuft of hair from her head and had two dozen bruises on her body (i.e., one dozen bruises on her abdomen chest, one on her right posterior arm, one in her groin area, cut blood vessels, and bruising on the small bowel). M.S. also suffered two freshly broken ribs that were most likely attributable to resuscitation efforts as well as a bruised knee.

involuntary-manslaughter conviction under Count Three is also based upon sufficient evidence.

**{¶41}** Next, we turn to address Shellabarger's argument regarding the weight of the evidence.

*Manifest-Weight-of-the-Evidence Analysis*

**{¶42}** Here, Shellabarger sets forth two assertions in support of her manifest-weight-of-the-evidence challenge. First, she asserts that the source of the bruising was never established, and thus, could have been attributable to CPR, rather than child abuse. Secondly, she contends that others in the household had both opportunity and access to M.S., and hence could have caused M.S.'s injuries.

**{¶43}** As we previously determined in our sufficiency-of-the-evidence analysis above, the State was not required (under Counts Three and Four) to demonstrate *how* M.S. acquired her injuries since the predicate-felony offense under these counts involved an act of omission or circumstances of neglect. *See Guerra*, 2022-Ohio-3609, at ¶ 27.

**{¶44}** Notwithstanding the foregoing, Shellabarger's arguments can be distilled as an attack on the jury's witness-credibility determinations involving Coleman, since the majority of his testimony related to establishing a time line of events which was at variance with Shellabarger's theory of the case and to Shellabarger's demeanor, and to Dr. Schlievert, because he testified that the

majority of the bruises on M.S.'s abdomen and chest were attributable to child abuse and not CPR.

{¶45} "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 8th Dist. Cuyahoga No. 96535, 2011-Ohio-5671, ¶ 13, citing *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus.

{¶46} Significant to us, the jury had the opportunity to observe all of the State's witnesses who testified at trial. After weighing the evidence presented, the jury reached the conclusion contrary to the one asserted on appeal by Shellabarger. Indeed, the jury in this case "'view[ed] the witnesses and observe[d] their demeanor, gestures[,] and voice inflections, and use[d] these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984). Certainly, it is within the jury's province to parse out what is credible testimony from what is not. *See State v. Wainwright*, 7th Dist. Mahoning No. 119 MA 0023, 2020-Ohio-623, ¶ 37, citing *State v. Mastel*, 26 Ohio St.2d 170, 176-177 (1971). Moreover, the jury's verdict "'"is not against the manifest weight of the evidence because the[y] chose to believe the State's witnesses rather than the defendant's version of the events.'"" *State v. Missler*, 3d Dist. Hardin No. 6-14-06, 2015-Ohio-1076, ¶ 44, quoting *State v. Bean*, 9th Dist. Summit No. 26852, 2014-

Ohio-908, ¶ 15, quoting *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16.

**{¶47}** After reviewing the entire record, we will not say that the evidence weighs heavily against Shellabarger's involuntary-manslaughter and endangering-children convictions. Therefore, we will not conclude that the jury clearly lost its way, which created a manifest miscarriage of justice such that Shellabarger's convictions under Counts Three and Four must be reversed and a new trial ordered.

**{¶48}** Accordingly, Shellabarger's third and fourth assignments of error are overruled.

### Assignment of Error V

**Defendant Was Denied The Effective Assistance Of Counsel As Required By The Sixth Amendment To The U.S. Constitution.**

**{¶49}** In her fifth assignment of error, Shellabarger argues that her trial counsel was ineffective for failing to present a defense, and that, trial counsel should have presented an independent-medical expert.

*Standard of Review*

**{¶50}** "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick*, 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45. A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and

(2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141 (1989).

**{¶51}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

**{¶52}** Here, Shellabarger raises two challenges regarding the effectiveness of her trial counsel, on appeal. First, Shellabarger contends that her trial counsel was ineffective for failing to present any evidence to instill reasonable doubt. Secondly, she asserts that trial counsel was ineffective for failing to utilize a medical expert to cast doubt.

**{¶53}** "[A] defendant has the burden of affirmatively demonstrating the error of the trial court on appeal." *State v. Stelzer*, 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7, citing *State v. Cook*, 9th Dist. Summit No. 20675, 2002-Ohio-2646, ¶ 27. "App.R. 12(A)(2) provides that an appellate court 'may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).'" *State v. Jackson*, 10th Dist. Franklin No. 14AP-670, 2015-Ohio-3322, ¶ 11, quoting App.R. 12(A)(2). "Additionally, App.R. 16(A)(7) requires that an appellant's brief include '[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.'" *Id.*, quoting App.R. 16(A)(7).

{¶54} Since we are not required to address arguments that have not been sufficiently presented for review or supported by proper authority under App.R. 16(A)(7), we will not address Shellabarger's arguments.

{¶55} Accordingly, Shellabarger's fifth assignment of error is overruled.

{¶56} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and SHAW, J.J., concur.**

**/jlr**